ISHEE, J.,
for the Court.
¶ 1. Larry Carey was convicted of one count of armed robbery by the Tunica County Circuit Court on April 6, 2006. He was sentenced to life imprisonment as a habitual offender in the custody of the Mississippi Department of Corrections. Aggrieved, Carey appeals, asserting that: (1) the trial court erred by denying his motion for judgment notwithstanding the verdict and (2) the trial court’s sentence of life imprisonment was improper. Finding that the trial court erred by sentencing Carey to life imprisonment absent a recommendation from the jury, we affirm the conviction and reverse the sentence of life imprisonment and remand for resentenc-ing.
FACTS AND PROCEDURAL HISTORY
¶ 2. Carey was indicted on February 10, 2004, and charged with three counts of armed robbery for robberies that occurred at several casinos throughout Tunica, Mississippi.[1] He was tried before the Tunica County Circuit Court on April 6, 2006.
¶ 3. At trial, the State presented the testimony of Gail Pohl, the victim of one of the robberies. Pohl testified that she and her husband were staying as guests of the Hollywood Casino Hotel on the night of March 31, 2002, and early morning hours of April 1, 2002. Sometime around midnight, Pohl left her hotel room in order to retrieve a pillow from her car. While walking through the hotel parking lot, she was confronted by a black male who pulled out a handgun and asked for her purse. *372 Pohl initially refused, but she was later forced to surrender the purse after the man threatened to kill her. After surrendering her purse, Pohl witnessed the man take off running, get into a car that had been circling the parking lot, and drive away. Pohl immediately notified casino security about the robbery. Pohl testified that at the time of the robbery, her purse contained the following items: a $300 cash voucher from the Hollywood Casino, credit cards, a social security card, eight Brittany Spears concert tickets, keys, and a cell phone.
¶ 4. The State also presented the testimony of Tiffany Hayes. Hayes testified that on the same night of Pohl’s robbery, she and a friend, Jennifer Heath, were driving in her car when they saw two men standing on the side of the street. The men were identified as Carey and Mark McLemore. When Hayes pulled her car over, the men asked if she would give them a ride to the casino so they could cash in a receipt. Hayes agreed and climbed into the backseat with Heath. She allowed McLemore to drive while Carey sat in the passenger seat. When the group arrived at the Hollywood Casino, Hayes witnessed Carey jump out of the car. He was not carrying anything with him when he left. At some point later, Carey returned to the ear with a woman’s purse. As the group began to drive away, Hayes witnessed a woman chasing after the car. Hayes further testified that after Carey rummaged through the contents of the purse, he tossed the purse out of the window. Heath later corroborated Hayes’s testimony and further added that she, herself, witnessed Carey take a cash voucher out of the purse before he disposed of it. Both Hayes and Heath stated that at the conclusion of the evening, they dropped the men off at an apartment that they believed to be the residence of Charles Butler.
¶ 5. Officer Cedric Davis, an investigator with the Tunica County Sheriffs Department, testified that on the following day, he investigated the armed robbery at the Hollywood Casino. Once he arrived at the casino, Officer Davis interviewed Pohl and casino security. Pohl told Officer Davis what happened, gave a description of the perpetrator, and a description of the getaway vehicle. In speaking with casino security, he learned that security personnel could identify Pohl’s cash voucher by its serial number. He also learned that the serial number could be used to not only track the voucher back to the machine that issued it, but also to the cashier’s cage where the voucher was cashed in. As a result, casino security was able to determine that Pohl’s voucher was cashed in on April 1, 2002, by a male identified as Charles Butler. Officer Davis also had the opportunity to speak to both Hayes and Heath about their whereabouts on the night of the robbery. They shared their story about Carey obtaining a woman’s purse at the casino. Based on Officer Davis’s investigation, Carey was identified as a suspect in the robbery. ’ Subsequently, he compiled a photographic lineup containing six individual photographs, which he showed to Pohl. Pohl positively identified Carey as the man who robbed her at gunpoint.
¶ 6. After Carey was arrested, he was advised of his Miranda rights. Officer Davis testified that after acknowledging those rights, Carey made inculpatory statements on two separate occasions. In the first statement, Carey admitted that he had gone to a casino with McLemore and Butler to “cash in a check.” In the second, Cai'ey admitted that he was involved in two of the robberies, but only McLemore and Hayes were involved in the other. Specifically, Carey admitted to Officer Davis that he had “snatched a purse” *373 at the Hollywood Casino on the night in question.
¶ 7. Carey testified on his own behalf and was the only witness called by the defense. He denied any involvement in the robberies for which he was charged. Carey also denied making inculpatory statements to Officer Davis. He claimed that the only statement he gave to Officer Davis was that he was not involved in any of the robberies. However, the State presented Officer Sheila McKay as a rebuttal witness who testified that she was present when Cai’ey confessed to Officer Davis that he was involved in two robberies at the Hollywood Casino.
¶ 8. Carey was found not guilty of the first two counts of armed robbery, but he was found guilty on the third count pertaining to the armed robbery of Pohl on April 1, 2002. He was sentenced to life imprisonment without parole as a habitual offender under Mississippi Code Annotated section 99-19-81, even though the jury did not specifically recommend a life sentence in them verdict. Carey was remanded into the custody of the MDOC. He filed a motion for a directed verdict and a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, both of which were denied. From that conviction, sentence, and denial of relief, Carey filed this appeal.
ANALYSIS
I. Whether the trial court erred in denying Carey’s motion for a judgment notwithstanding the verdict as to the charge of armed robbery.
¶ 9. Carey contends that there was insufficient evidence to support his conviction for armed robbery. He argues that the testimony of the State’s witnesses was so fraught with inconsistencies that it was wholly unreliable and non-credible. He also claims that there were omissions in the evidence offered by the State that created reasonable doubt as to whether he actually committed the armed robbery of Pohl. Therefore, he argues the State failed to prove its case beyond a reasonable doubt, and his motion for a judgment notwithstanding the verdict should have been granted by the trial court.
¶ 10. Review of a motion for a directed verdict or a judgment notwithstanding the verdict tests the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). The court must determine whether the evidence shows “beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Taking the evidence in the light most favorable to the verdict, the question is not whether the court believes the evidence established guilt beyond a reasonable doubt but whether a rational trier of fact could have found all the elements of the offense existed beyond a reasonable doubt. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 11. To avoid a directed verdict or a judgment notwithstanding the verdict on the armed robbery charge, the State had to put on evidence that Carey did felo-niously take from Pohl’s person or her presence the purse and cash voucher by putting her in fear of immediate injury to her person by the exhibition of a deadly weapon. Miss.Code Ann. § 97-3-79 (Rev. 2006). The State was required to put on sufficient evidence of each of these elements sufficient to allow a rational trier of fact to find Carey guilty beyond a reasonable doubt.
*374 ¶ 12. After careful review of the record, we find that there was more than sufficient, credible evidence to support Carey’s conviction for armed robbery. The State was not only able to present eyewitness testimony placing Carey at the scene of the crime and a positive identification by the victim, but it also submitted two incul-patory statements made by Carey himself. Specifically, both Hayes and Heath testified that they gave Carey a ride to the Hollywood Casino on the night in question. They witnessed him leave the car and return shortly thereafter with a woman’s purse. They were present with Carey in the getaway car when he went through the contents of the purse, and they witnessed him take out what appeared to be a cash voucher, and subsequently, toss the purse out of the window. Further, Carey was positively identified by the victim, Pohl, as the man who robbed her of her purse at gunpoint. She confirmed that the contents of her purse included a $300 cash voucher from the Hollywood Casino. Lastly, both Officer Davis and Officer McKay testified that Carey confessed to robbing Pohl at the Hollywood Casino.
¶ 13. It is true that Carey did not actually cash in Pohl’s cash voucher. Officer Davis’s investigation revealed that the voucher was actually cashed in by Butler. It is also true that during the trial, Carey denied making the inculpatory statements to Officer Davis regarding any involvement in the robberies. However, this merely created a conflict in the evidence that the jury was responsible for resolving in determining if Carey committed the armed robbery beyond a reasonable doubt.
¶ 14. From the evidence presented at trial, we cannot say the trial court was in error in denying Carey’s motion for a judgment notwithstanding the verdict. Taken in the light most favorable to the verdict, there was sufficient evidence to prove each element of the crime of armed robbery and for a rational trier of fact to find beyond a reasonable doubt that Carey committed the crime. This issue is without merit.
II. Whether the trial court’s sentence of life imprisonment was improper.
¶ 15. Carey challenges his sentence of life imprisonment as a habitual offender under Mississippi Code Annotated section 99-19-81. He argues that the trial judge had no authority to impose a life sentence without a recommendation from the jury. Since the jury failed to recommend a life sentence in its verdict, Carey contends that his sentence should be reduced to a term of more than three years but less than life imprisonment.
¶ 16. “Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.” Nichols v. State, 826 So.2d 1288, 1290(¶10) (Miss.2002) (quoting Wall v. State, 718 So.2d 1107, 1114(1129) (Miss.1998)).
¶ 17. In this case, Carey was tried as a habitual offender under Mississippi Code Annotated section 99-19-81. Upon conviction, the trial judge imposed a life sentence upon Carey based on his belief that such a sentence was required by statute. However, section 99-19-81 specifically reads, “[ejvery person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime ... shall be sentenced to the maximum term of imprisonment prescribed for such felony....” Miss.Code Ann. §99-19-81 (Rev.2007). The maximum term of imprisonment for a person convicted of armed robbery is life imprisonment, but only “if the penalty is so fixed by the jury.” See Miss.Code Ann. § 97-3-79. If the jury fails to recommend a sentence of life im *375 prisonment, “the court shall fix the penalty at imprisonment in the state penitentiary for any term of not less than three years.” Id.
¶ 18. It is undisputed that the jury in this case was released "without being asked to consider the question of whether Carey should receive a life sentence. Instead, the trial judge took it upon himself to impose a life sentence under the mistaken belief that he had the authority to do so. During sentencing, the trial judge specifically noted:
In the instant case of armed robbery he (Carey) is hereby sentenced to the maximum term of imprisonment prescribed for this armed robbery charge, which is, it says life imposed by jury, but under 99-19-81, it’s still life and this is what the Court is now sentencing him under.
¶ 19. In Stewart v. State, 372 So.2d 257, 258-59 (Miss.1979), our supreme court held that in an armed robbery case, a trial judge could not impose a life sentence without authority from the jury. The supreme court has extended the rule of Stewart to armed robbery cases wherein the defendant is sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81. See Friday v. State, 462 So.2d 336, 339 (Miss.1985) (superseded by statute). In such a case, “the maximum term of imprisonment prescribed for the crime for which the appellant was convicted is that sentence imposed by the trial judge, which must be reasonably less than life.” Id.
¶ 20. It is apparent to this Court that the trial judge misinterpreted the language of section 99-19-81, which gives the judge authority to impose a life sentence only when such a sentence is set by the jury. Such was an abuse of the trial judge’s discretion as the sentence falls outside of the limits prescribed by Mississippi Code Annotated sections 99-19-81 and 97-3-79.
¶21. Therefore, Carey’s conviction of armed robbery is affirmed, and the case is remanded for resentencing according to the supreme court’s holding in Friday, that being a sentence of more than three years but reasonably less than life.
¶ 22. THE JUDGMENT OF THE TUNICA COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY IS AFFIRMED, AND THE SENTENCE OF LIFE IMPRISONMENT AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND REMANDED FOR RESENTENCING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., SPECIALLY CONCURS WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., CHANDLER, GRIFFIS AND ROBERTS, JJ.

. Carey was found not guilty of two of the three counts. Because he was only convicted of one count of armed robbery, that of robbing Pohl, we will only discuss the facts relevant to that conviction.