IRVING, J.,
for the Court.
¶ 1. Following a jury trial, the Calhoun County Circuit Court convicted Calvin Jefferson of the sale of cocaine. Jefferson was sentenced to serve twenty years in the custody of the Mississippi Department of *411 Corrections, with four years suspended and four years of post-release supervision. He also was ordered to pay a $5,000 fine with $2,500 suspended. Aggrieved, Jefferson appeals and asserts that the verdict is against the overwhelming weight of the evidence.
¶2. We find no reversible error; thus, we affirm Jefferson’s conviction and sentence.
FACTS
¶ 3. Jefferson was indicted in August 2007 for selling cocaine in December 2005 to a confidential informant. In January 2008, Jefferson went to trial and was convicted of selling forty dollars’ worth of cocaine to the confidential informant. The confidential informant testified concerning the transaction that took place between Jefferson and him.
¶ 4. The informant stated that sometime prior to this incident, he contacted Amory Willard and Tim Hamilton about becoming a confidential informant.[1] The informant testified that he had struggled with a drug problem for approximately seven years and that he wanted to become a confidential informant in order to conquer his drug addiction. The informant stated that he thought becoming an informant would help him kick his drug habit. He surmised that drug dealers would not sell him drugs after they found out that he had worked as a confidential informant.
¶ 5. The informant testified that on December 8, 2005, Jefferson called him several times and asked if he wanted to buy drugs.[2] The informant stated that, at this point, he called Deputy Willard and informed him that Jefferson had called and wanted to sell the informant some drugs. According to the informant, he then met with Deputy Willard and Agent Hamilton at a remote location in Calhoun County. The informant stated that Deputy Willard and Agent Hamilton searched his person and his vehicle before equipping him with a wire and a camera. The informant also stated that recording devices were put in his vehicle. The informant testified that while at the remote location, he called Jefferson and told him that he wished to purchase forty dollars’ worth of crack cocaine and suggested that they meet at a location in town.
¶ 6. The informant then stated that he and Jefferson met at a car wash on Highway 9 and that the officers monitored their meeting from a nearby location. The informant stated that he gave the money to Jefferson and that Jefferson told him that he was going to go and get the cocaine and bring it back to him. According to the informant, Jefferson returned approximately fifteen minutes later and placed the crack cocaine on the hood of the informant’s vehicle. The informant testified that Jefferson then asked if he could have some of the drugs and that he eventually allowed Jefferson to take a piece of it. The informant further testified that he returned to the post-buy location after rebuffing an attempt by Jefferson to get the two of them to ride around and smoke crack together.
¶ 7. On cross-examination, Jefferson’s attorney pointed out that there was a possession of cocaine charge pending against the informant when the informant made the purchase from Jefferson, even though the informant had stated on direct examination that he did not have any charges *412 pending against him when he made the buy. Jefferson’s attorney also pointed out that the crime had occurred over two years prior to Jefferson’s trial and that the informant had not been prosecuted for that crime. The informant testified that he did not agree to serve as an informant in hopes of receiving a lenient sentence in that case.
¶ 8. Further, Jefferson’s attorney asked the informant if there was any particular reason that Jefferson was selected as the person from whom to buy the drugs. The informant responded that, although he could not remember the entire conversation, he thought that Deputy Willard suggested that he try to make a buy from Jefferson. Jefferson’s attorney then questioned the informant about the informant’s extensive criminal history, including a charge of burglary, forgery, and numerous charges of writing bad checks. Jefferson’s attorney pointed out that the informant had either pleaded guilty or that the charges had been dismissed. Jefferson’s attorney also pointed out that three weeks before the informant bought the drugs from Jefferson, Deputy Willard procured the dismissal of a charge that the informant had pending against him for driving with a suspended license. Also, on cross-examination, the informant admitted that Deputy Willard had agreed to help him with outstanding tickets in exchange for his making drug buys.
¶ 9. Deputy Willard also testified at Jefferson’s trial. He stated that he was contacted by the informant, who told him that Jefferson had called him and asked him if the informant wanted to purchase drugs. Deputy Willard stated that he and Agent Hamilton met with the informant and equipped him with audio and video devices. Deputy Willard further stated that he and Agent Hamilton went to a location about a mile and a half from the car wash where they listened to what transpired between the informant and Jefferson. According to Deputy Willard, although they were able to hear, they could not see things as they unfolded.[3] Deputy Willard stated that he heard the informant make contact with Jefferson and that the informant gave money to Jefferson. Deputy Willard then stated that Jefferson left the car wash and went to an area known as the “Quarters of Bruce.” Deputy Willard testified that Jefferson returned a short while later and tried to get into the informant’s vehicle but that the informant refused to allow him to do so. Deputy Willard stated that Jefferson then placed the rocks of cocaine on the hood of the informant’s vehicle and that the informant picked them up, but later, after constant pleas from Jefferson, allowed Jefferson to take a small piece.
¶ 10. Agent Hamilton also testified at Jefferson’s trial. He stated that on December 8, he met with the confidential informant and Deputy Willard at a “pre-buy” location. Agent Hamilton stated that he and Deputy Willard searched the informant and his vehicle and placed audio and video surveillance equipment in the informant’s vehicle. Agent Hamilton stated that he then issued the informant forty dollars to be utilized in the purchase of drugs from Jefferson. Agent Hamilton said that the informant then contacted Jefferson and arranged to meet Jefferson at the car wash. Once at the car wash, Agent Hamilton observed the informant give Jefferson forty dollars. Agent Hamilton testified that he watched Jefferson leave the car wash and travel north on Highway 9. According to Agent Hamilton, Jefferson returned to the car wash shortly thereafter and “conducted the transaction.” Agent Hamilton stated that after the *413 transaction had been completed, he and Deputy Willard met the informant and that the informant gave the drugs to him. Agent Hamilton testified that he subsequently transported the substance to the Mississippi Crime Laboratory.
¶ 11. Grady Downey, a forensic scientist with the crime lab, testified that he examined the substance that was brought to the crime lab and determined that it was free base cocaine.
¶ 12. Jefferson testified on his own behalf and denied that he had sold drugs to the informant. However, he admitted that he had been a crack cocaine addict for approximately sixteen years and that he was still smoking cocaine. Jefferson stated that he and the informant had smoked together on numerous occasions before this incident. Jefferson recalled that the informant had called him and told him that he had drugs that he wanted to smoke and that they agreed to meet at the car wash.[4] According to Jefferson, shortly after he arrived, he remembered that he did not have his pipe, so he left to go get it. Jefferson stated that after he returned, he attempted to get into the informant’s vehicle, but the informant would not allow him to do so. Jefferson stated that he suggested that they go somewhere to smoke the drugs but that the informant told him that he was not going anywhere. Jefferson stated that this caused him to wonder why the informant had called him if he did not want to smoke.
¶ 13. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 14. On appeal, Jefferson raises one issue: that the verdict is against the overwhelming weight of the evidence. In Brown v. State, 970 So.2d 710, 713 (¶ 8) (Miss.2007), the Mississippi Supreme Court stated:
We will disturb a jury verdict only when “it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). This Court acts as a “thirteenth juror” and views the evidence in the light most favorable to the verdict. Id. (citing Herring, 691 So.2d at 957). A decision to reverse and order a new trial, “unlike a reversal based on insufficient evidence, does not mean that the acquittal was the only proper verdict.” Id. (quoting McQueen v. State, 423 So.2d 800, 803 (Miss.1982)).
¶ 15. Jefferson’s contention — that the verdict is against the overwhelming weight of the evidence — is premised on the fact that the only evidence of the exchange of money for drugs came from the informant. He points out that the video did not capture money or drugs being transferred between him and the informant. Further, Jefferson argues that the confidential informant’s testimony is not credible because he did not initially mention that he had a history of trouble with the law. Jefferson also argues that it is not clear that he actually transferred drugs to the informant.
¶ 16. We find Jefferson’s arguments unconvincing, as the testimonies of the informant, Deputy Willard, and Agent Hamilton clearly establish that Jefferson sold cocaine to the informant. Deputy Willard and Agent Hamilton testified that they listened to the transaction, and Deputy *414 Willard stated that the video corroborates the informant’s testimony that Jefferson placed the rocks of cocaine on the hood of the informant’s vehicle after being paid forty dollars for the crack cocaine.
¶ 17. As for Jefferson’s argument that the informant’s testimony is not credible, we note that it has long been established that “[t]he jury is the trier of witness credibility.” Hicks v. State, 812 So.2d 179, 194(¶ 40) (Miss.2002) (citing Collier v. State, 711 So.2d 458, 462(¶ 18) (Miss.1998)). “Jurors are permitted to, and have a duty to, resolve conflicts in testimony they hear.” Id. (citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)). Further, it is well settled that “[jurors] may believe or disbelieve, accept or reject, the utterances of a witness.” Id. (quoting Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979)). Thus, based on the reasons set forth above, we conclude that allowing Jefferson’s conviction to stand would not sanction an unconscionable injustice. Accordingly, we find no merit to this issue.
¶ 18. THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED AND FOUR YEARS OF POST-RELEASE SUPERVISION AND TO PAY A FINE OF $5,000 WITH $2,500 SUSPENDED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. Willard was a deputy sheriff at the time that the confidential informant contacted him, and Hamilton is an agent with the Mississippi Bureau of Narcotics.

. The informant stated that he had known Jefferson for approximately a year prior to this incident.

. Prior to trial, Deputy Willard and Agent Hamilton watched the video in its entirety.

. Jefferson stated that it was not unusual for the informant to call him because he was aware that the informant preferred not to smoke drugs alone. Jefferson also stated that the informant would often call him and ask if he wanted to smoke drugs with the informant.