981 So.2d 334 (2008)
Milton DOWNING a/k/a Milton Leon Downing, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00263-COA.
Court of Appeals of Mississippi.
April 8, 2008.
*336 George T. Holmes, Leslie S. Lee, Jackson, attorneys for appellant.
Office of the Attorney General by Laura Hogan Tedder, attorney for appellee.
Before LEE, P.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. Milton Downing was tried for and convicted of sale of cocaine. The Circuit Court of Coahoma County sentenced Downing to ten years in the custody of the Mississippi Department of Corrections, with five years suspended to be served on supervised probation. The trial court also imposed a fine of $5,000, with $2,500 suspended. Downing appeals and argues that: (1) the State did not sufficiently establish the chain of custody for the cocaine that was admitted into evidence, and (2) the evidence was insufficient to support the verdict.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Downing was arrested and charged with sale of cocaine to an undercover agent with the North Central Mississippi Narcotics Task Force. Agent Bobby Walker testified about the facts surrounding the cocaine sale. On August 30, 2006, pursuant to an undercover operation, Agent Walker drove around Clarksdale, Mississippi in an unmarked car. Inside the car was a soda can equipped with a hidden camera that recorded video, but not sound. Agent Walker came across a man on the street, stopped his car, and asked the man if he could buy some "hard," otherwise known as crack cocaine. The man got into the car's passenger seat and directed Agent Walker to drive to a residence in Clarksdale. Once there, the man exited the car and returned with a substance that appeared to be crack cocaine. Agent Walker gave the man forty dollars in cash in exchange for the substance. Then, Agent Walker dropped the man off at an unknown location and secured the substance inside an evidence bag. Gary Fernandez, with the Mississippi Crime Laboratory in Batesville, Mississippi, testified that test results showed that the substance inside the evidence bag was .2 gram of crack cocaine.
¶ 4. Agent Walker testified that a videotape was made from the hidden camera recording. This videotape was played for the jury. Corporal Milton Williams, with the Clarksdale Police Department, testified that he viewed the videotape and identified the man shown on the videotape as Downing. Downing was arrested based on this identification. Corporal Williams testified that, as a longtime resident of Clarksdale and from his fourteen years as a police officer, he knew Downing. Corporal Williams stated that he had come in contact with Downing on numerous occasions and that they often spoke at those times. He also testified that Downing has a scar under his left eye. Agent Walker identified Downing in court as the man from whom he had purchased cocaine. Downing testified, denying that he was the man who appeared on the videotape. He admitted that he has a scar under his left eye. Downing maintained that he was elsewhere in Clarksdale at the time the crime allegedly occurred.

*337 LAW AND ANALYSIS
I. WHETHER A SUFFICIENT CHAIN OF CUSTODY WAS ESTABLISHED FOR STATE'S EXHIBIT 1.
¶ 5. During Agent Walker's testimony, the State offered a bag of cocaine into evidence. Downing objected, arguing that the State had failed to establish a proper chain of custody. The trial court admitted the bag of cocaine as exhibit S-1 after Agent Walker testified concerning the chain of custody. Agent Walker testified that he recognized exhibit S-1 as the substance he purchased from Downing. Agent Walker testified that, after he purchased the substance from Downing, he placed it into an evidence bag, which he sealed, initialed, and dated. Then, he placed the bag inside a secret compartment in his vehicle. Agent Walker stated that, upon his return to the task force headquarters, he obtained a case number and wrote it on the bag. Agent Walker testified that the bag was stored in the narcotics room at task force headquarters. He said that the task force commander, Mary Nolden, was the sole person with access to the narcotics room. Agent Walker explained that, when suspected narcotics are to be sent to the crime lab for testing, Nolden opens the room and authorizes their transfer to the lab.
¶ 6. Fernandez testified that the lab uses a bar coding system to track the movement of substances within the lab. He testified that the lab policies and procedures were followed in this case. Fernandez testified that Jackie Johnson accepted the bag into the lab and initialed the bag, and Fernandez initialed the bag when he resealed it after the substance was tested.
¶ 7. Agent Walker testified that Agent Anthony Jones was the person who carried the bag of suspected cocaine to the crime lab. However, after viewing the lab report, Agent Walker recognized that the lab report indicated the lab had received the bag from Agent Meesha Lessie, whose regular duty included transporting suspected narcotics to the crime lab. Agent Walker admitted that he had been mistaken about which agent carried the bag to the lab. Agent Walker also exhibited confusion about whether or not Agent Lessie waited at the lab for the test results. Agent Walker did not know who picked up the bag from the lab, but he and Agent Lessie brought it to court that day. On cross-examination, Agent Walker admitted that he conducted between two and four drug buys on August 30, 2006. He stated that he placed the drugs from each buy in separate evidence bags.
¶ 8. At the close of the State's evidence, Downing moved for a directed verdict on the ground that the State failed to complete the chain of custody. Downing argued that the chain of custody was incomplete because of Agent Walker's confusion over whether Agent Jones or Agent Lessie transported the cocaine to the crime lab and because there was no testimony about who retrieved it from the crime lab. The trial court denied Downing's motion. On appeal, Downing argues that the cocaine should not have been admitted into evidence because Agent Walker's confusion rendered his testimony unreliable. Downing also argues that the fact that Agent Walker made multiple buys that day supported a conclusion that, due to accidental substitution, the cocaine admitted as exhibit S-1 was not the substance which Agent Walker purchased from Downing.
¶ 9. "Testimony that a particular material is a controlled substance is of no relevance unless the State also proves the defendant's connection to that particular substance." Robinson v. State, 733 So.2d 333, 335(¶ 6) (Miss.Ct.App.1998). To establish *338 the connection necessary for relevance, the proponent of the controlled substance must produce "evidence `sufficient to support a finding that the matter in question is what its proponents claim.'" Id. (quoting M.R.E. 901(a)). This may be accomplished by establishing a reliable chain of custody of the substance from the time of its acquisition by the State. Id. However, the fundamental inquiry under Rule 901(a) is whether sufficient evidence exists to enable a reasonable jury to find beyond a reasonable doubt that the evidence is what it is claimed to be. Id. Therefore, if a "witness makes a positive permissible identification of the object that it is what its proponent claims," then there is no basis for a chain of custody objection. Butler v. State, 592 So.2d 983, 985-86 (Miss.1991).
¶ 10. The test for continuous possession of evidence by the State, known as chain of custody of evidence, is "whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." Gibson v. State, 503 So.2d 230, 234 (Miss.1987) (quoting Grady v. State, 274 So.2d 141, 143 (Miss.1973)). However, the State is not required to "produce every person who handled the object or to account for every moment of every day." Butler, 592 So.2d at 985. In assessing the reliability of the chain of custody, there is a presumption of regularity supporting the acts of public officials. Anderson v. State, 904 So.2d 973, 979(¶ 19) (Miss.2004). The defendant bears the burden of producing evidence of a broken chain of custody. Id. The trial court has substantial discretion in matters regarding the chain of custody of evidence. This Court will not reverse the trial court's decision unless its discretion was so abused as to be prejudicial to the defendant. Nix v. State, 276 So.2d 652, 653 (Miss.1973).
¶ 11. We find that the trial court acted within its discretion in admitting the bag of cocaine proffered by the State. There was sufficient evidence to enable a reasonable jury to conclude beyond a reasonable doubt that the bag of cocaine admitted as the State's exhibit 1 was that substance sold by Downing to Agent Walker. At the trial, Agent Walker properly identified the bag of cocaine as the substance that he bought from Downing. He pointed out his initials on the bag, the case number, and his seal. Though Agent Walker initially was mistaken about which agent carried the substance to the lab, the State established through the lab report, and Agent Walker's subsequent testimony, that Agent Lessie carried the substance to the lab. Fernandez testified that the substance was tracked at the lab via bar code and initialed by employees, and the lab's policies and procedures were followed in this case. Without more, the fact that Agent Walker performed between two and four drug buys on August 30, 2006, is too speculative to show a probability that other drugs were substituted for the substance Agent Walker purchased from Downing. Downing must prove a probability of substitution, not a mere possibility. Ellis v. State, 934 So.2d 1000, 1005-06(¶ 23) (Miss.2006). The State submitted sufficient evidence to support a jury finding that the State's exhibit S-1 contained the substance which Agent Walker bought from Downing and that no substitution or tampering occurred. This issue is without merit.
II. WHETHER THE EVIDENCE SUPPORTS THE VERDICT.
¶ 12. Downing's motion for a judgment notwithstanding the verdict (JNOV) was denied by the trial court, and he now challenges the sufficiency of the evidence supporting the verdict. When the defendant attacks the sufficiency of the *339 evidence via a motion for JNOV, "the critical inquiry is whether the evidence shows `beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). We view the evidence in the light most favorable to the verdict. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We will affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id.
¶ 13. Downing was convicted of violating Mississippi Code Annotated section 41-29-139(a)(1) (Rev.2005), which makes it a crime to knowingly or intentionally "sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance." In his argument on this issue, Downing does not contest the proof that someone sold Agent Walker cocaine, but rather he maintains that the State failed to prove Downing was that person. Downing asserts that Agent Walker's identification testimony was not credible because Agent Walker observed the person who sold him cocaine on only that one occasion, and Agent Walker testified that he did not know the seller's name. Downing contends that, due to the inadequacy of Agent Walker's identification, the jury was bound to accept Downing's conflicting testimony that he was elsewhere in Clarksdale at the time of the cocaine sale.
¶ 14. Downing's argument fails to acknowledge the testimony of Corporal Williams. Corporal Williams's testimony indicated that he had a high degree of familiarity with Downing, stemming from numerous encounters with him. Corporal Williams testified that Downing was the person on the videotape. The Court has viewed the videotape of the cocaine sale. The high-quality, color videotape shows a man getting into the passenger side of a vehicle. The duration of the videotape is approximately eight minutes; the man exits the car for approximately two minutes and then returns. The man is talking, gesticulating, and eating snack food out of a bag as the vehicle moves. The face of the man, with a scar under the left eye, is clearly visible from an upward angle for most of the tape's duration. We find that the totality of the evidence supporting Downing's identification as the cocaine seller was sufficient to enable a rational jury to conclude he was that person.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED TO BE SERVED ON SUPERVISED PROBATION AND A FINE OF $5,000 WITH $2,500 SUSPENDED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.