IRVING, P.J.,
 

 for the Court:
 

 ¶ 1. On January 13, 2010, Maney Simmons Jr. was convicted of sexual battery. The Jackson County Circuit Court sentenced Simmons to thirty years in the custody of the Mississippi Department of Corrections, with twenty-five years to serve and five years of post-release supervision. On January 22, 2010, Simmons filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. Feeling aggrieved, Simmons appeals and argues that there was insufficient evidence to support the jury’s verdict and that the verdict is against the overwhelming weight of the evidence.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. Simmons dated Mary Brown
 
 [1]
 
 off and on for ten years. On November 26, 2007, Mary went to work and left Ann, her ten-year-old daughter, and John, her fourteen-year-old son, with Simmons. Simmons sent John to a nearby store to buy snacks. According to Ann, once Simmons and Ann were alone, Simmons asked Ann to: “Come on and do what we been doing.”
 

 ¶ 4. Ann attempted to run from Simmons, who grabbed Ann and tried to restrain her. Ann freed herself, grabbed a cellular telephone, and fled to the bathroom. Ann pushed her body against the door to keep Simmons out. Ann called her mother and begged her to come home because Simmons was touching her. Mary testified that when she arrived at the house, she found Simmons sitting at the kitchen table. Mary asked Simmons: “What the hell is going on up in here?” Simmons replied, “What the hell you mean? What you talking about, what’s going on up in here?” Ann then came out of the bathroom crying. Mary comforted Ann and told Simmons to leave.
 

 ¶ 5. Mary took Ann to the police station to report the incident. Officer David Richardson interviewed Ann and Mary and prepared a written report. In his report, Officer Richardson noted that Simmons had grabbed Ann and tried to pull her into her bedroom. However, Ann made no allegations of sexual abuse to Officer Richardson. The next day, Mary’s mother suggested that Mary take Ann to the emergency room. On the way to the emergency room, Mary asked Ann if she wanted to talk about the incident. Ann told her mother that Simmons had asked Ann to “[c]ome on and do what we been doing.” Mary asked Ann, “What have you been doing?” Ann responded, “I don’t know.”
 

 ¶ 6. Ann was evaluated by Cynthia Horn, a registered nurse with specialized training in sexual-assault examinations. Nurse Horn testified that Ann told her that two weeks prior, Simmons had performed oral sex on her. Ann told Nurse
 
 *1021
 
 Horn that she would sometimes wake up with her pants off, and Simmons would be in her room. Ann also stated that Simmons had put his hands down her pants. Nurse Horn took two vaginal swabs from Ann and sent them to the Moss Point Police Department. However, Nurse Horn testified that she did not expect the swabs to lead to the discovery of any physical evidence of sexual abuse because two weeks had passed since Simmons had allegedly performed oral sex on Ann. Nurse Horn reported Ann’s allegations of sexual abuse to the police and the Mississippi Department of Human Services.
 

 ¶ 7. Mary testified that she did not hear from the police after Ann’s emergency-room visit. Mary made several attempts to follow up with the police regarding Ann’s case, but her phone calls were not returned. Eventually, Mary went to the police station and asked to speak to the chief of police. The chief indicated that Ann’s file was missing, so Mary requested Nurse Horn’s report and delivered it to the police.
 

 ¶ 8. On September 25, 2008, Ann’s case was assigned to Detective Joycelyn Craig. The same day, Detective Craig conducted a taped interview with Ann. During the interview, Ann again stated that Simmons had asked her to “[c]ome on and do what we been doing.” Detective Craig asked Ann, “And did you know what he was talking about ... ?” Ann replied, “No.” Ann told Detective Craig that on three occasions she had woken up and found Simmons on her bed. However, when Detective Craig asked if Simmons had ever tried to “put his penis in you[,]or felt on you[,] or licked on you[,] or anything,” Ann replied, “No.” However, Detective Craig’s written report states that Ann accused Simmons of performing oral sex on her. Detective Craig testified that Ann made the accusation either before or after she began recording the interview.
 

 ¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Sufficiency of the Evidence
 

 ¶ 10. Simmons argues that there was insufficient evidence to support the jury’s verdict and that the circuit court erred in denying his motion for a JNOV. In support of his argument, Simmons points to Ann’s prior inconsistent statements and the lack of physical evidence.
 

 ¶ 11. When reviewing the legal sufficiency of evidence, a Mississippi appellate court considers the evidence “in the light most favorable to the prosecution.”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). If “the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[,]’ ” an appellate court will uphold the conviction.
 
 Id.
 
 (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)).
 

 ¶ 12. Simmons points out that Ann did not report any sexual abuse in her interview with the police on November 26, 2007. Additionally, during her taped interview with Detective Craig, Ann denied that Simmons had performed oral sex on her. Simmons contends that these inconsistencies undermined Ann’s credibility.
 

 ¶ 13. Our case law is clear that “the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible
 
 *1022
 
 evidence.”
 
 Miley v. State,
 
 935 So.2d 998, 1001 (¶ 10) (Miss.2006) (citations omitted). While Ann did not initially reveal any sexual abuse to the police, the next day, she told Nurse Horn that Simmons had performed oral sex on her. During her taped interview with Detective Craig, Ann denied that Simmons had performed oral sex on her. However, Detective Craig testified that Ann told her either before or after the taped portion of the interview that Simmons had performed oral sex on her. Ann also testified that Simmons had “licked her private area.” "When asked why she did not initially report the sexual abuse to the police and later denied during her taped interview with Detective Craig that any abuse had occurred, Ann testified that she was scared.
 

 ¶ 14. We do not find that Ann’s testimony was sufficiently discredited to warrant setting aside the conviction. While Ann did not initially report the abuse, her statements to Nurse Horn the following day were consistent with what she later told Detective Craig and with her testimony at trial. Ann was also cross-examined regarding her initial failure to report the abuse to the police and her inconsistent statements to Detective Craig. The jury was fully capable of taking any inconsistent statements made by Ann into account when assessing her credibility.
 

 ¶ 15. We are also not persuaded by Simmons’s argument that the lack of physical evidence renders the evidence legally insufficient. As Nurse Horn noted in her testimony, it was unlikely that any physical evidence would be recovered, given that two weeks had passed since Simmons had last performed oral sex on Ann. Nurse Horn testified that DNA evidence must be recovered from a victim within seventy-two hours. Despite the fact that no physical evidence existed, Ann testified that Simmons had performed oral sex on her, and Ann’s testimony was corroborated by the statements she had made to Nurse Horn and Detective Craig.
 

 ¶ 16. We find that there was sufficient evidence for a jury to conclude that Simmons had committed sexual battery. Therefore, the circuit court did not err in denying Simmons’s motion for a JNOV. This issue is without merit.
 

 2. Weight of the Evidence
 

 ¶ 17. Simmons argues that the jury’s verdict is against the overwhelming weight of the evidence and that the circuit court erred in denying his motion for a new trial. “The standard of review of a post-trial motion is abuse of discretion.”
 
 Withers v. State,
 
 907 So.2d 342, 352 (¶ 31) (Miss.2005) (quoting
 
 Flowers v. State,
 
 601 So.2d 828, 833 (Miss.1992)). When reviewing a circuit court’s decision to deny a motion for a new trial, the evidence is considered “in the light most favorable to the verdict.”
 
 Williams v. State,
 
 35 So.3d 480, 491 (¶ 41) (Miss.2010) (citing
 
 Bush,
 
 895 So.2d at 844 (¶ 18)). Therefore, we will only order a new trial where the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction [an] unconscionable injustice.”
 
 Id.
 
 (quoting
 
 Bush,
 
 895 So.2d at 844 (¶ 18)).
 

 ¶ 18. As discussed above, the testimonies of Nurse Horn, Detective Craig, and Ann support Simmons’s conviction. Ann testified that Simmons had performed oral sex on her. Nurse Horn and Detective Craig also testified that Ann told them that Simmons had performed oral sex on her. Therefore, we find that the verdict is not contrary to the overwhelming weight of the evidence. This issue is without merit.
 

 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF SEXUAL
 
 *1023
 
 BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY-FIVE YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . To protect the privacy of the minor victim and her family, the names of the victim and her relatives have been changed.