ISHEE, J., for the court:
¶ 1. In January 2010, Freddie Joe Carter was convicted in the Harrison County *478 Circuit Court, First Judicial District, of armed robbery. He was subsequently sentenced as a habitual offender to fifteen years in the custody of the Mississippi Department of Corrections (MDOC). Because Carter was proven to have been a convicted felon at the time of the incident and proven to have displayed and used a firearm during the commission of the armed robbery, his sentence was enhanced to include an additional ten years in the custody of the MDOC, to run consecutively to his fifteen-year sentence for armed robbery. Carter filed a motion for a new trial, which the circuit court denied. Carter now appeals claiming that the evidence did not support the jury’s verdict of guilty or the circuit court’s application of the firearm-enhancement statute. We disagree and affirm the circuit court’s judgment.
STATEMENT OF FACTS
¶ 2. On May 15, 2008, Michael Hillie was at home with his sister, Tyetta Jackson, and his mother, Brenda Waits, at Waits’s house in Orange Grove, Mississippi. In addition to living in the house, Waits also ran a hair salon out of the home. While some of the facts are in dispute, the record supports that late in the evening of May 15, Carter arrived at Waits’s salon door. Carter banged on the door and yelled that he wanted to speak with Hillie’s older brother, Ardelius Stewart.
¶ 3. Hillie heard the loud knocking and advised his mother that someone was at the door. Waits instructed Hillie to investigate; Hillie then approached the back door and asked who was knocking. Carter replied that he was Hillie’s cousin, Derek, and that he was looking for Stewart. Hil-lie responded that Stewart was not there and moved to the window next to the door to get a better look at the person who was knocking. Upon reaching the window, Hil-lie recognized that Carter was not Hillie’s cousin, Derek, and he saw that Carter had a gun pointed at him through the window. Carter began yelling at Hillie to open the door, which Hillie did.
¶ 4. Carter then barged into the house accompanied by two persons wearing masks. He repeatedly asked Hillie, “Where the money at?” Hillie responded that he did not have any money and did not know what money to which Carter was referring. Hillie then began wrestling with Carter to get the gun away from him. One of the masked accomplices began shouting, “Shoot that n-r, shoot that n-r,” and hit Hillie from behind. Hillie fell to the floor; then Carter hit Hillie on the head with the gun approximately two or three times and ran toward the back of the house where Waits and Jackson were located.
¶ 5. Carter found Waits and demanded that she give him the money she had earned from that day’s work in the salon. Waits gave her purse to Carter with approximately $500 inside, and all three perpetrators ran out of the house. Waits notified the Gulfport Police Department, which dispatched officers to the scene.
¶ 6. Upon his arrival, Detective Matthew Thomas with the Gulfport Police Department recovered a cell phone from Waits’s yard. After some investigation into the cell phone and its contents, Detective Thomas spoke with several suspects who identified Carter as a person of interest. Detective Thomas then compiled a photographic lineup of individuals, including Carter and others who resembled Carter. Detective Thomas contacted Waits a few days after the crime had occurred and asked her to come to the Gulfport Police Department’s headquarters. While there, Waits positively identified Carter in the photographic lineup as the man who had robbed her. Detective Thomas stated that *479 it took Waits approximately “half of a second,” with no hesitation, to provide positive identification of Carter as the perpetrator.
¶ 7. Sometime later, an arrest warrant was issued for Carter. Officer Jarred Fore with the Gulfport Police Department was apprised of Carter’s arrest warrant and then charged with finding Carter and bringing him in for questioning. When Officer Fore arrived at Carter’s father’s residence, he observed a vehicle leaving the residence with a driver who resembled Carter. Officer Fore then followed the vehicle and activated his blue lights and siren, signaling for the vehicle to pull over. The vehicle accelerated and began making multiple evasive maneuvers to elude Officer Fore. After approximately a five-minute chase, the vehicle slammed on its brakes, and the driver attempted to exit the vehicle. Officer Fore reached the vehicle’s door in time to stop it from opening any further, and then he observed Carter attempt to crawl out of the vehicle’s window. Officer Fore tased Carter, at which point Carter fell out of the window and was arrested by Officer Fore.
¶ 8. Thereafter, Carter was charged with armed robbery, and a trial was set for January 20, 2010. At trial, although Carter did not testify, his counsel maintained that on the night of the incident Carter was at home drinking and playing cards with his girlfriend, Demetreal Robinson; her mother, Adrienne Clark; and several friends. Robinson, Clark, and Carter’s brother all testified in support of Carter’s alibi; they stated that Carter was home drinking and playing cards until sometime between 1:00 and 3:00 in the morning before everyone went to bed.
¶ 9. The State presented testimony from Jennifer Shaw, Lashonda Kelly (Lashon-da), and Tameka Kelly (Tameka), who claimed to be Carter’s accomplices in the crime. Shaw testified that she and Stewart have a child together; therefore, Waits is the child’s grandmother. Shaw further testified that on the evening in question, she contacted Carter and asked him to help her retrieve money from Stewart that she claimed he owed her in child support. Carter agreed to help Shaw. Shaw, La-shonda, and Tameka met Carter at the apartment Carter shared with Robinson; their son, Rodriguez; and Robinson’s mother, Clark. Shaw stated that Robinson, Clark, and two other unidentified persons were all present at the apartment when she, Lashonda, and Tameka arrived.
¶ 10. Thereafter, Carter, Shaw, La-shonda, and Tameka got into Tameka’s vehicle and drove to Waits’s house. Shaw then corroborated the State’s theory of the case that Carter demanded at gunpoint that Hillie open the door, beat Hillie on the head with the gun, and robbed Waits. Shaw also stated that after leaving the house, they drove back to Shaw’s apartment, where Shaw and Lashonda were dropped off. Tameka then returned Carter to his apartment. Lashonda and Tameka testified to the same events.
¶ 11. At the conclusion of the trial, the jury returned a verdict of guilty for Carter on the charge of armed robbery. The circuit court then sentenced Carter to fifteen years in the custody of the MDOC. Because Carter was a convicted felon and the jury had established the fact that a firearm was used in the commission of the robbery, the circuit court applied a firearm enhancement to Carter’s sentence, which added an additional ten years to run consecutively to Carter’s fifteen-year sentence for armed robbery. Carter was also found to be a habitual offender and was sentenced to a total of twenty-five years in the custody of the MDOC, without eligibility for parole or probation. Aggrieved, Carter appeals, claiming the evidence is insuf *480 ficient to support the jury’s verdict and his sentence enhancement for the firearm. Finding no error, we affirm the circuit court’s judgment.
DISCUSSION
¶ 12. A motion for a new trial challenges the weight of the evidence. Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.Ct.App.2005). We will not disturb a circuit court’s denial of a motion for a new trial unless the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. We weigh the evidence in the light most favorable to the verdict. Id.
¶ 13. The State presented testimony from Officer Fore, Detective Thomas, Shaw, Lashonda, and Tameka in support of Carter’s guilt. Detective Thomas fully explained to the jury how he came into contact with the cell phone left in Waits’s yard and how he used the cell phone and the information contained therein to uncover the details of the crime at hand. Officer Fore further explained his encounter with Carter, and Carter’s attempt to flee from authorities. Finally, Shaw, La-shonda, and Tameka all testified that they were with Carter from the inception of the crime until well after the crime had been committed. Them testimony not only corroborated the testimony of Detective Thomas, it also corroborated the testimonies of Waits and Hillie as to the events that occurred just before and during the crime itself.
¶ 14. While Carter offered fact witnesses to dispute the State’s theory of the case and support Carter’s alibi that he was at home on the night in question, it was the jury’s ultimate decision as to which side to believe. Carter’s corroborating witnesses consisted of, his live-in girlfriend, who is also the mother of his child; his child’s grandmother; and his brother. Accordingly, it is reasonable to assume that each of Carter’s witnesses had plausible motives to protect him. As such, we cannot say that the jury’s verdict, or the circuit court’s denial of Carter’s motion for a new trial, was unsubstantiated. The State presented strong eyewitness evidence that Carter was guilty of the crime charged, and it was not unreasonable to doubt Carter’s alibi.
¶ 15. Finally, Carter argues that the circuit court did not have substantial evidence to support a firearm sentence enhancement. Mississippi Code Annotated section 97-37-37(2) (Rev.2007) provides:
[A]ny convicted felon who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of ten (10) years, to run consecutively, not concurrently, which sentence shall not be reduced or suspended.
The jury found Carter guilty of armed robbery, as defined in Mississippi Code Annotated section 97-3-79 (Rev.2007), stating:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
*481 ¶ 16. The eyewitnesses to the crime asserted that Carter was displaying a small handgun at all times during the commission of the crime. Had the jury not been privy to the information regarding the handgun, which was the “deadly weapon” used in the armed robbery, the charge of “armed” robbery would not have been available to them. As such, the jury clearly established that Carter was displaying and using a firearm during the robbery. We cannot say that the circuit court’s enhancement of Carter’s sentence using the firearms-enhancement statute was error. We affirm the circuit court’s judgment.
¶ 17. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS AS A HABITUAL OFFENDER, AND SENTENCE OF TEN YEARS AS A SENTENCE ENHANCEMENT FOR THE DISPLAY AND USE OF A FIREARM AS A CONVICTED FELON DURING THE COMMISSION OF A FELONY, WITH THE SENTENCES TO RUN CONSECUTIVELY WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, CARLTON AND RUSSELL, JJ„ CONCUR. ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.