ISHEE, J.,
for the Court:
¶ 1. In March 2011, Larry Chapman was convicted in the Humphreys County Circuit Court of two counts of shooting into an occupied motor vehicle; two counts of aggravated assault; one count of murder; and one count of conspiracy to shoot into an occupied motor vehicle, to commit aggravated assault, and to commit murder. Chapman was sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC) on each count of shooting into an occupied motor vehicle, with the sentences to run concurrently with each other but consecutively to all of the other sentences. Chapman was also sentenced to fifteen years in the custody of the MDOC on each count of aggravated assault, with the sentences to run concurrently with each other but consecutively to all of the other sentences. Chapman was sentenced to life in the custody of the MDOC for murder, with the sentence to run consecutively to all of the other sentences. Finally, Chapman was sentenced to five years in the custody of the MDOC for conspiracy, with the sentence to run consecutively to all of the other sentences. Aggrieved, Chapman appeals claiming the circuit court committed reversible error by allowing certain photos into evidence at trial and by denying his motions for a directed verdict, a judgment notwithstanding the verdict (JNOV), and a new trial.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Late in the evening of January 14, 2010, Freddie Holmes was walking to his house in Humphreys County, Mississippi, when he saw his brother, Randy Holmes, sitting in a vehicle talking to a friend. Freddie stopped to talk with Randy, who indicated that he and the friend were not finished with their conversation. Freddie then continued walking to his house. While en route, Freddie noticed Melissa Taylor’s vehicle driving down the road in the direction of Randy’s vehicle. Freddie then observed Larry Chapman and-Antonio Wright running toward Randy’s vehicle. Immediately thereafter, Freddie heard gunshots.
¶ 3. Freddie then ran in the direction of his brother’s vehicle and saw Randy running toward him. Randy began yelling for Freddie to run away. Freddie heard another gunshot and saw Randy fall to the ground. Freddie then witnessed Chapman stand over Randy and shoot him. Chapman fled the scene in Taylor’s vehicle. Freddie ran to his brother and called for help. Randy was taken by ambulance to a nearby hospital but died from a gunshot wound to the head.
¶ 4. Chapman, Wright, and Taylor were all arrested and charged with various crimes related to the incident. The three trials were severed. At Chapman’s trial, Wright testified that he and Chapman were in a gang called the Insane Vice Lords. Wright further testified that Chapman’s brother, Ray Lon Chapman, *788 was killed shortly before Randy’s death and that Randy’s death was retaliation for Ray’s killing.
¶ 5. The testimony at Chapman’s trial farther indicated that Chapman, Wright, and Taylor were drinking and driving on the night in question. When they saw Randy in his vehicle, Chapman and Wright decided to act. The men exited Taylor’s vehicle, and Taylor then drove around the block while waiting on the men. Chapman and Wright approached Randy’s vehicle and asked him for information on where to buy marijuana. When Randy responded, Wright fired one shot into the car. Randy fled the car and grabbed Wright, at which point Wright dropped his weapon. Chapman picked up the gun and began shooting. Randy attempted to escape, but Chapman followed him and fatally shot him. Wright quickly fled the scene.
¶ 6. During the trial, the State attempted to- introduce photographic evidence depicting Randy’s gunshot wounds. The circuit court allowed the photographs into evidence, and they were presented to the jury. After the State rested its case-in-chief, Chapman’s counsel moved for a directed verdict, which was denied. Chapman’s counsel moved for another directed verdict at the .close of the case. That motion was also denied.
¶ 7. After deliberation, the jury found Chapman guilty on all counts. Chapman’s counsel then moved for a JNOV, which was denied. Shortly thereafter, the circuit court sentenced Chapman to the custody of the MDOC on each count. Chapman’s counsel immediately moved for a new trial, which was denied. Chapman now appeals.
DISCUSSION
I. Admission of Photographs into Evidence
¶ 8. With regard to the admission of photographs into evidence, the Mississippi Supreme Court has held:
Admission of photographs by the trial court is reviewed for abuse of discretion. A decision favoring admissibility will not be disturbed absent a clear abuse of that judicial discretion. The discretion of the trial judge is almost unlimited regardless of the gruesomeness, repetitiveness, and the extenuation of probative value. Some probative value is the only requirement needed in order to support a trial judge’s decision to admit photographs into evidence. So long as a photograph has probative value and its introduction serves a meaningful eviden-tiary purpose, it may still be admissible despite being gruesome, grisly, unpleasant, or even inflammatory. A photograph has a meaningful evidentiary purpose when it: (1) aids in describing the circumstances of the killing; (2) describes the location of the body or cause of death; or (3) supplements or clarifies witness testimony.
Chamberlin v. State, 989 So.2d 320, 340 (¶ 73) (Miss.2008) (internal citations omitted).
¶ 9. In the instant case, Chapman asserts the circuit court erred by admitting three photographs that he claims were prejudicial and unnecessary. All of the photographs were taken at the time of Randy’s autopsy. In his appeal, Chapman references the State’s exhibits S-23, S-24, S-25, and S-26, but takes particular issue with the latter three photographs.
¶ 10. Exhibit S-23 is a photograph of Randy’s front right upper arm and front right shoulder showing two gunshot wounds to the shoulder and the bicep area. Exhibit S-24 is a photograph of Randy’s right back and right back shoulder showing one gunshot wound just below the shoulder region. Exhibit S-25 is a photograph of Randy’s full upper back and the *789 back of his head showing one gunshot wound to the head. Finally, Exhibit S-26 is a photograph of Randy’s right knee showing one gunshot wound just above the knee cap. However, Exhibit S-26 was not admitted into evidence and was only marked for identification purposes.
¶ 11. We disagree with Chapman’s argument that the photographs are prejudicial and overly gruesome. Despite Chapman’s claim that one single photograph from the group would have sufficed, having reviewed the photographs in question, it is clear that there was not an individual photograph that would have depicted all of Randy’s injuries. Each photograph shows only the area of the respective gunshot wounds, and none of the photographs reveal Randy’s face.
¶ 12. Chapman was on trial for murder and aggravated assault. Certainly the State was entitled to present evidence of the fatal gunshot wound to the head in support of the murder charge. We also find that the State was entitled to present evidence of the other gunshot wounds as the basis of Chapman’s aggravated-assault charges. The circuit court did not abuse its discretion in admitting the photographs into evidence. This issue is without merit.
II. Motions for Directed Verdict and JNOV
¶ 13. Motions for a directed verdict and a JNOV both challenge the sufficiency of the evidence. See Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). The supreme court has stated that in considering the denial of motions for a directed verdict and a JNOV, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 14. Here, Chapman was charged with shooting into an occupied vehicle, aggravated assault, murder, and conspiracy. With regard to shooting into an occupied vehicle, Mississippi Code Annotated section 97-25-47 (Rev.2006) renders it a crime “[i]f any person or persons shall wilfully shoot any firearms or hurl any missile at, or into, any train, bus, truck, motor vehicle, depot, station, or any other transportation facility!)]” Concerning aggravated assault, Mississippi Code Annotated section 97-3-7(2) (Supp.2011) reads: “A person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.... ” Murder is defined as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being_” Miss.Code Ann. § 97-3-19(l)(a) (Rev.2006). Finally, conspiracy is defined in Mississippi Code Annotated section 97-l-l(l)(a), (h) (Supp. 2011), which states: “If two (2) or more persons conspire ... [t]o commit a crime ... such persons, and each of them, shall be guilty of a felony[.]”
¶ 15. The autopsy report and photographs presented at trial verified that Chapman attacked Randy by shooting him numerous times in his body, including a fatal gunshot wound to the head. Additionally, Freddie testified to witnessing Chapman shoot Randy multiple times during the incident. Moreover, Wright testified that he, Chapman, and Taylor conspired to attack and kill Randy prior to the shooting. Wright also testified to witnessing Chapman shoot into Randy’s vehicle at Randy and Randy’s friend, shoot Randy in *790 the trunk of his body, and shoot Randy in the head. Freddie’s and Wright’s testimonies clearly established a solid foundation for Chapman’s guilt with regard to all charges. These issues are meritless.
III. Motion for New Trial
¶ 16. In Chapman’s final argument on appeal, he asserts that the circuit court erred by failing to grant his motion for a new trial. A motion for a new trial challenges the weight of the evidence. See Vaughn v. State, 926 So.2d 269, 271 (¶ 4) (Miss.Ct.App.2006) (citation omitted). “When reviewing a denial of a motion for a new trial, this Court ‘will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Id. (quoting Bush, 895 So.2d at 844 (¶ 18)).
¶ 17. As discussed previously, the autopsy report, photographs, and testimony at trial provided an ample basis for a jury to conclude that Chapman committed the crimes for which he was charged. We cannot find that the verdicts of guilty on all charges were contrary to the overwhelming weight of the evidence. Accordingly, this issue is without merit.
¶ 18. THE JUDGMENT OF THE HUMPHREYS COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II, SHOOTING INTO AN OCCUPIED MOTOR VEHICLE; COUNTS III AND IV, AGGRAVATED ASSAULT; COUNT V, MURDER; AND COUNT VIII, CONSPIRACY; AND SENTENCES OF FIVE YEARS EACH ON COUNTS I AND II; FIFTEEN YEARS EACH ON COUNTS III AND IV; LIFE ON COUNT V; AND FIVE YEARS ON COUNT VIII; WITH THE SENTENCES IN COUNTS I AND II TO RUN CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO THE SENTENCES IN ALL OTHER COUNTS; WITH THE SENTENCES IN COUNTS III AND IV TO RUN CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO THE SENTENCES IN ALL OTHER COUNTS; WITH THE SENTENCE IN COUNT V TO RUN CONSECUTIVELY TO THE SENTENCES IN ALL OTHER COUNTS; AND WITH THE SENTENCE IN COUNT VIII TO RUN CONSECUTIVELY TO THE SENTENCES IN ALL OTHER COUNTS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.