# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00756-COA

**ANDRE DOSS A/K/A ANDRE L. DOSS A/K/A "DRE"**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                          APPELLEE

DATE OF JUDGMENT:             02/10/2015
TRIAL JUDGE:                  HON. LAMAR PICKARD
COURT FROM WHICH APPEALED:    JEFFERSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:            ALEXANDER C. MARTIN
NATURE OF THE CASE:           CRIMINAL - FELONY
TRIAL COURT DISPOSITION:      CONVICTED OF ONE COUNT OF
                              BURGLARY OF A DWELLING AND
                              SENTENCED TO TWELVE YEARS IN THE
                              CUSTODY OF THE MISSISSIPPI
                              DEPARTMENT OF CORRECTIONS
DISPOSITION:                  AFFIRMED - 08/09/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., WILSON AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     On February 10, 2015, Andre Doss was convicted in the Circuit Court of Jefferson County, Mississippi, of burglary of a dwelling with the intent to commit sexual battery and was sentenced to serve twelve years in the custody of the Mississippi Department of Corrections. On February 13, 2015, Doss filed a combined motion to set aside the sentence and motion for a judgment of acquittal notwithstanding the verdict as well as a motion for

a new trial. Doss's posttrial motions were denied. On appeal, Doss claims: (1) the evidence was insufficient to support the verdict; (2) the verdict was against the overwhelming weight of the evidence; and (3) the circuit court erred by failing to instruct the jury on the elements of the intended crime of sexual battery. Finding no error, we affirm.

**FACTS**

¶2. Georgia Ford testified that on the evening of July 4, 2014, she worked a concession stand at a rodeo in Natchez, Mississippi. Georgia returned to her house in Fayette, Mississippi, between 3:10 a.m. and 3:20 a.m. on July 5. She had not invited anyone over, and was not expecting any company other than her son, Victor, who lived with her. After unloading her vehicle and changing clothes, Georgia fell asleep on the couch. The front door to the house was not locked.

¶3. Georgia woke up to Doss standing over her—naked and rubbing her hips. Georgia asked: "Dre,[1] what [are] you doing in my house?" As Doss was fleeing, Georgia asked again: "Dre, what [are] you doing in my house?" Victor testified that he ran out of his bedroom when he heard Georgia scream. Georgia and Victor went to the door, where they heard rustling in the bushes and the neighbor's dog barking. They decided to drive around to look for Doss, but they did not find him.

¶4. Georgia testified that when she initially returned home from the rodeo, the outside light was on. However, when she and Victor went to the front door after Doss fled, Georgia noticed that the light was no longer on. When Georgia and Victor returned home from

---

[1] Georgia stated that she only knew Doss by the nickname "Dre" and that she knew him through her sister.

looking for Doss, Victor realized that the lightbulb had been unscrewed. Victor screwed the lightbulb back in, and the light came back on.

¶5.     With the light back on, Georgia looked down by the hedges and noticed a pair of men's underwear. She picked them up but threw them back down because there were "stains" on them.[1]  It was later determined that Doss's semen was on the underwear. Subsequently, Victor called 911. While Victor was on the phone, someone banged on the door and turned the doorknob. However, the identity of the person is unknown.

¶6.     Doss testified that he and Georgia were engaged in a secret relationship. Doss had previously dated Georgia's sister, and said that was the reason no one knew about his relationship with Georgia. He stated that Georgia would give him a specific time, always late at night, to come over, and he would hitchhike or catch rides to Georgia's house.

¶7.     Doss stated that he visited Georgia and had sex with her at her house a few days prior. Therefore, he acknowledged that it was possible that his pair of underwear was at Georgia's house, and that more clothing could be found. But Doss said that on July 4, he attended a barbeque until 9 p.m. Then he had a couple of drinks and played video games at his mother's house, where he lived, until he fell asleep at 6 a.m. on July 5. Doss's mother testified that when she got home from work, around 4:10 a.m., Doss was playing video games. However, on cross-examination, she admitted that she did not know where Doss had been before she got home from work.

¶8.     Georgia denied any relationship with Doss and stated that Doss had never been in her

---

[1] At some point, the pair of underwear was moved into the house.

3

house. Likewise, Victor did not know of any romantic involvement between Georgia and Doss.

**DISCUSSION**

### I.      Sufficiency of the Evidence

¶9.      When determining whether the State presented legally sufficient evidence to support the verdict, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id.* "During the trial, the jury is charged with the responsibility of weighing and considering the conflicting evidence of the witnesses and determining whose testimony should be believed." *Winters v. State*, 814 So. 2d 184, 187 (¶9) (Miss. Ct. App. 2002) (citation omitted).

¶10.     Mississippi Code Annotated section 97-17-23(1) (Rev. 2014) states that burglary of a dwelling is the "breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein . . . ." Doss argues the State did not prove he broke and entered Georgia's house or that he intended to commit sexual battery.

¶11.     Considering the evidence in the light most favorable to the State, we find there was

4

sufficient evidence to convict Doss of burglary of a dwelling with the intent to commit sexual battery. Georgia testified that the front door was closed but unlocked. "It is well-established in Mississippi that a breaking is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or raising a latch." *Davis v. State*, 910 So. 2d 1228, 1231 (¶8) (Miss. Ct. App. 2005) (citation omitted). Georgia also testified that she fell asleep on the couch and then woke up to Doss standing over her—naked and rubbing her hips. When she asked Doss what he was doing, he fled. A DNA test confirmed that the semen found on the underwear in Georgia's yard belonged to Doss. And both Georgia and her son, Victor, testified that the outside light was off because the lightbulb had been unscrewed.

¶12. Although Doss testified that he and Georgia were involved in a relationship, no other witnesses or evidence provided additional support for this claim. Doss also testified that he would catch rides to Georgia's house, but none of the individuals who ever dropped Doss off at Georgia's house testified. Georgia denied the relationship, and Victor stated that he did not know of a relationship between Georgia and Doss. Georgia also stated that this was the first time Doss had been in her house, which was supported by Victor's testimony that he had never seen Doss inside of the house.

¶13. Doss also testified that, on the night of July 4, he went to a barbeque, had a few drinks, and then played video games until 6 a.m. on July 5. Doss's mother testified in his defense, but she admitted that she did not have knowledge of Doss's whereabouts before she got home from work, which was around 4:10 a.m.

5

¶14. In light of these facts, we find that any rational juror could have found beyond a reasonable doubt that all the elements had been met by the State in proving burglary of a dwelling. Furthermore, we find there was sufficient evidence that Doss had the intent to commit sexual battery. "Intent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time." *Newburn v. State*, 205 So. 2d 260, 265 (Miss. 1967). "[A d]efendant's intention is manifested largely by the things he does." *Id.* This issue is without merit.

## II. Overwhelming Weight of the Evidence

¶15. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). The evidence is viewed in the light most favorable to the verdict. *Id.* From the evidence previously described, we cannot find that allowing the verdict to stand would sanction an unconscionable injustice.

## III. Jury Instruction on Elements

¶16. The jury was instructed on the essential elements of the crime of burglary—(1) "breaking and entering the dwelling house or inner door of such dwelling house of another"; and (2) "with the intent to commit some crime therein." Miss. Code Ann. § 97-17-23(1). In addition, the jury instructions specifically identified sexual battery as the crime Doss intended to commit vis-à-vis the burglary. *See id.* Doss argues that the jury should also have been instructed on the elements of the intended crime of sexual battery.

6

¶17. We review Doss's claim for plain error,[2] which "requires the finding of not only an error, but one that resulted in a 'miscarriage of justice' affecting the defendant's fundamental rights." *Windless v. State*, 185 So. 3d 956, 961 (¶11) (Miss. 2015).

¶18. In *Windless* and *Quinn v. State,* 191 So. 3d 1227 (Miss. 2016), our supreme court addressed arguments very similar to Doss's argument here. Windless argued the trial judge failed to instruct the jury on the elements of larceny as the "underlying offense" of the burglary. *Windless*, 185 So. 3d at 960 (¶9). And Quinn argued the trial judge failed to instruct the jury on the elements of assault. *Quinn,* 191 So. 3d at 1232 (¶20). "Our caselaw holds that only the *intent* to commit some crime need be proven in order to establish the second element of burglary—the State need not also prove the *elements* of that intended crime." *Id*. at 1233 (¶24) (emphasis in original). The supreme court stated that "larceny" is commonly understood to mean stealing, and "assault" is commonly understood to mean causing or attempting to cause bodily injury to another. *Id.* at (¶25). Likewise, we believe "sexual battery" is commonly understood to mean sexual penetration with another person without his or her consent.

¶19. The State submitted sufficient evidence for the jury to find that Doss broke into and entered Georgia's house with the intent to commit sexual battery. *See id.* This issue is

---

[2] The court reporter informed this Court that the jury-instructions conference was not recorded. Therefore, a transcript is not available for review. The State makes the following assumption: "[S]ince there was no proposed jury instruction submitted by the defense containing the elements of [sexual battery], there would have been no objection to the instructions on this point." And Doss "submits that the trial court *plainly erred* by failing to instruct the jury on the essential elements of the underlying crime of sexual battery." (Emphasis added). For these reasons, we review this issue for plain error.

without merit.

**¶20.    THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**