## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00705-COA

JASON MCMANUS                                                        APPELLANT

v.

STATE OF MISSISSIPPI                                                 APPELLEE

DATE OF JUDGMENT:              03/02/2015
TRIAL JUDGE:                   HON. WILLIAM E. CHAPMAN III
COURT FROM WHICH APPEALED:     RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: BENJAMIN ALLEN SUBER
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:             MICHAEL GUEST
NATURE OF THE CASE:            CRIMINAL - FELONY
TRIAL COURT DISPOSITION:       CONVICTED OF SEXUAL BATTERY AND
                               SENTENCED TO THIRTY YEARS IN THE
                               CUSTODY OF THE MISSISSIPPI
                               DEPARTMENT OF CORRECTIONS, WITH
                               FIFTEEN YEARS SUSPENDED AND FIVE
                               YEARS OF SUPERVISED PROBATION
DISPOSITION:                   AFFIRMED - 08/16/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     A Rankin County jury found Jason McManus guilty of the sexual battery of Vicki,[1]

who is the daughter of his former girlfriend and current wife, Melanie.  The trial judge

sentenced McManus to thirty years in the custody of the Mississippi Department of

_____

        [1] The names of the victim and the victim's relatives have been changed to protect the
victim's identity.

Corrections (MDOC), with fifteen years suspended and five years of supervised probation. McManus now appeals, arguing the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. In 2010, Vicki testified that when she was fourteen years old, McManus and her mother, Melanie, started dating. Shortly thereafter, McManus moved in with Vicki and her mother in Pearl, Mississippi. Vicki had known McManus "pretty much [her] whole life." Initially, Vicki did not like McManus, but over time he became "like [her] best friend – [she] could tell him anything."

¶3. One such conversation occurred when Vicki was fifteen years old. Vicki testified that McManus was the first person she told about losing her virginity. She "told him that it was hurting, and . . . he said that he wanted to help it not hurt." On that day, no sexual incident occurred between them, but on a later day, one did. Vicki testified that she and McManus went to the Easy Stop convenience store in Pearl to get her mother a Diet Coke and some ice cream. McManus instructed Vicki to call her boyfriend, because he wanted to "help" her. After they had parked, McManus told Vicki to pull down her pants and underwear. Vicki was talking to her boyfriend when McManus "put his hand in [her] vagina." She did not "fight him off." Feeling uncomfortable though, Vicki told her boyfriend she had to go. Her clothes were pulled down to her knees. They did not speak on the way home. Once home, Vicki went to her bedroom. She did not tell her mother about the incident because Vicki thought her mother would not believe her.

2

¶4. Even after this incident, though, Vicki continued to consider McManus one of her best friends, and they remained close. She testified that McManus was somebody that "was there for [her]," and somebody to whom she could talk. Vicki testified that the inappropriate touching also continued on occasion, when they would go to the store together. Even so, Vicki admitted that McManus never physically hurt her or threatened her in any way. McManus also provided for her family financially, working at the Nissan manufacturing plant in Canton, and then for an offshore drilling company.

¶5. The abuse went past touching when Vicki told McManus she wanted an iPod for a late birthday or early Christmas present.[2] He told her he could get one from a coworker at Nissan. One day when Vicki came home from school, McManus told her that he had obtained an iPod for her, but the only way she could get it was to have sex with him twice. Initially she refused, but then agreed. Melanie was at work, and McManus was home alone with Vicki in the late afternoon because he worked the night shift at Nissan. Vicki was fifteen years old at the time and testified the incident occurred between November and December 2011. She remembered this time period because it was after she had lost her virginity in June or July 2011, after she had turned fifteen years old, but before McManus had proposed to her mother.

¶6. Vicki testified in detail about the incident. McManus told her to go to the bathroom, get a towel, and remove her tampon. She complied, and then went into her mother's bedroom. McManus laid the towel down on the bed; Vicki lay sideways while he remained

---

[2] Vicki's birthday is in April.

3

standing. She took her shorts and underwear off. McManus "pulled his penis out of the hole of his boxers," and put on a condom. She testified that "he stuck his penis in my vagina," but she started "scooting back because . . . I had changed my mind." She told him if he did not stop, she would tell her mother, at which point McManus "jumped up and said, 'what am I doing? I can't do this. You're my stepdaughter or you're like my daughter.'"

¶7.     Vicki testified that the encounter lasted less than a minute. She put her clothes back on and went to the living room, crying. Ultimately, McManus gave her the iPod. This incident was the only time McManus had sexual intercourse with Vicki, and he never inappropriately touched her again. He did, however, talk to her about having sex again.

¶8.     The sexual abuse came to light when Vicki told a family friend that McManus kept asking her to have sex. The family friend told Melanie while she was at work. When Melanie came home, she confronted both Vicki and McManus about the allegation. McManus started crying and said it was just a joke, but Vicki admitted it was true. That same evening – May 18, 2012 – McManus proposed to Melanie, who asked her daughter if she felt uncomfortable about it. Vicki responded she did not; so Melanie agreed. McManus and Melanie were married in August 2012.

¶9.     During an argument, Vicki finally told her mother about McManus having sex with her. Melanie had caught Vicki with her boyfriend over at her grandmother's house.[3] Melanie kept telling Vicki how disappointed McManus would be with her actions, and what a great person McManus was. Angry, Vicki asked her mother that if McManus was such a

---

[3] At this time, McManus was working offshore every other two-week period. When McManus was home, Vicki would stay with her grandmother.

4

great person, why did he have sex with her. Vicki testified that her mother was shocked at Vicki's accusation, and did not believe her. Vicki related that Melanie told her to pack up her things, and sent her to live with her estranged biological father. This arrangement lasted approximately one week before Vicki called her mother asking to return home, as she and her father were living mostly in motel rooms and fought all of the time. Vicki testified she wanted a more "stable place" to live, even though McManus was there occasionally.

¶10. While Vicki was living with her father, Vicki's godmother, Andrea Hale, asked Vicki about McManus's having sex with her. Initially, Vicki told Hale that it was true, but later that day Vicki recanted because she was tired of Hale asking her questions.

¶11. After the disclosure to her mother, Vicki did not go to the hospital, and did not inform law enforcement for nearly two years about the sexual abuse because "it was in the past and it was over." Additionally, no abuse had occurred in a while, and Vicki "felt like it should [be] left alone."

¶12. However, on October 6, 2013, Officer Jake Windham, a detective with the Pearl Police Department, received a sexual-abuse complaint from Lieutenant Brian Ellis by Vicki and the mother of one of Vicki's friends, whom Vicki had told.[4] Vicki had a forensic interview, and Officer Windham testified he did not detect any deception from Vicki, and her statements were consistent. The disclosures during the interview pointed to McManus as a suspect, and were sufficient to continue the investigation.

---

[4] Vicki also testified that she had gone to the Pearl Police Department not about the abuse, but to become emancipated, because she wanted out of her mother's house, as she was tired of living there, and she had gotten into an argument with her mother and grandmother.

5

¶13.    In November 2013, McManus was arrested on the charge of sexual battery, and an indictment was returned against him.[5] A jury trial commenced in February 2015. Vicki and Officer Windham testified for the State. During Vicki's cross-examination, defense counsel introduced a photograph Vicki had taken of herself using what she claimed was her mother's iPod, denying that the iPod in the photograph was the one McManus had given her. The date of the photograph was October 6, 2011.

¶14.    Officer Windham testified he was aware that Vicki recanted to her godmother and mother, but it was typical for a victim to recant due to "pressure outside of the situation." Additionally, Windham admitted that initially both Vicki and Hale reported that the sexual act occurred the same day Melanie and McManus became engaged, but Vicki later clarified the date was an earlier time.

¶15.    Melanie and McManus testified for the defense. Melanie testified that in the summer of 2013, Vicki became angry because Melanie would not let her live with her boyfriend. During this argument Vicki told her mother of the abuse. Melanie admitted she did not believe Vicki's accusations against McManus; moreover, Vicki later recanted to her. Melanie offered to take Vicki to the police about the abuse, but Vicki refused. Further, Melanie stated she did not send Vicki to live with her biological father; Vicki wanted to go, but her father had no relationship with his daughter. When Melanie confronted McManus in front of Vicki about the accusations, he denied the accusations, explaining that he was just telling Vicki how boys will ask for sex. At the time, Vicki agreed that is what McManus

_____

[5] The indictment only addressed the sexual incident in November or December of 2011, not the earlier digital-penetration.

meant. Also, Melanie testified that McManus bought Vicki an iPod in April 2011, and the photograph of Vicki is with that iPod, not Melanie's iPod, as hers did not take photographs.

¶16. McManus testified in his own defense. He stated that in November 2011, he was employed by a drilling company and would work two weeks offshore and then return home for two weeks. He admitted buying Vicki an iPod, but it was while he worked for Nissan in April 2011, not November or December.[6] Vicki was given the iPod the week after her birthday, around the end of April or the beginning of May 2011. On cross-examination, McManus denied ever speaking to Vicki about sex or her virginity, but explained that he just wanted to warn her about teenage boys' sexuality. He considered himself a father figure to Vicki. Finally, McManus denied ever having any sexual contact with Vicki.

¶17. The jury returned a verdict of guilty to the charge of sexual battery. The trial court denied McManus's motion for a judgment notwithstanding the verdict or a new trial. McManus timely appealed.

## ANALYSIS

¶18. McManus raises one issue: that the verdict is against the overwhelming weight of the evidence, because there are numerous inconsistencies in the evidence, and a vague timeline of events. Therefore, he claims he should be granted a new trial.

¶19. A motion for a new trial challenges the weight of the evidence. The standard of review for such a motion is abuse of discretion. *Dilworth v. State*, 909 So. 2d 731, 737 (¶20) (Miss. 2005) (citation omitted). The reviewing court "will only disturb a verdict when it is

---

[6] McManus's last day at Nissan was September 8, 2011.

7

so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). The evidence will be weighed in the light most favorable to the verdict. *Id.*

¶20. McManus was charged with sexual battery of Vicki under Mississippi Code Annotated section 97-3-95(1)(c) (Rev. 2014), which reads: "A person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child." The jury was properly instructed on these essential elements of sexual battery. There was some contradictory and inconsistent evidence presented to the jury, such as the date McManus stopped working at Nissan, the time frame of when McManus gave Vicki the iPod, the time frame of the offense, and Vicki's recanting her accusations to both Hale and Melanie. However, it is well established that it is the jury's role to assess the weight and credibility of the evidence and to resolve any conflicts in the evidence. *Latiker v. State*, 918 So. 2d 68, 73 (¶12) (Miss. 2005) (citation omitted). Ultimately, the jury decided to believe Vicki's version of events over that of McManus and Melanie, and not give the inconsistent evidence great weight.

¶21. We note Vicki's version of events was very detailed and never changed throughout her testimony. During his investigation, Officer Windham did not detect deception on Vicki's part. Vicki was able to recount specific details of both sexual incidents, but particularly the charged offense at the end of 2011. Further, while Vicki could not give an exact date of when the event occurred, one is not required in a child-abuse case as long as

8

the defendant is "fully and fairly advised of the charge against him." *Bateman v. State*, 125 So. 3d 616, 624 (¶25) (Miss. 2013) (quoting *Morris v. State*, 595 So. 2d 840, 842 (Miss. 1991)). Moreover, a specific date is not an element of sexual battery; so a vague timeline of events does not discredit Vicki's testimony. Office Windham also testified that the fact Vicki recanted to her mother and godmother was not unusual, and was usually due to "pressure from outside of the situation." Finally, McManus did not offer any concrete details to counter Vicki's version of events except to deny culpability. Viewing the evidence in the light most favorable to the verdict, allowing the verdict to stand does not sanction an unconscionable injustice. The trial court did not abuse its discretion in denying McManus's motion for a new trial.

¶22. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**