# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01036-COA

**L.M. BIRGE**                                                                                       **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2015 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES BENJAMIN ALLEN SUBER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART JASON L. DAVIS |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO FIFTEEN YEARS, WITH TEN YEARS TO SERVE AND FIVE YEARS SUSPENDED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 04/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    L.M. Birge was indicted on the charge of first-degree murder in the death of Callie

Ware.  Birge was ultimately convicted of manslaughter and sentenced to fifteen years in the

custody of the Mississippi Department of Corrections, with ten years to serve and five

suspended. On appeal, Birge argues an insufficiency of the evidence since the State of Mississippi failed to prove that he did not act in necessary self-defense. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. On August 27, 2013, Callie and her sister, Tikea, were at Callie's residence. Birge's daughter, Rose, came by to talk to Callie. A fight broke out between Callie and Rose inside the residence. The fight eventually moved to the street. Although the versions of events differ, it is undisputed that Birge shot Callie in the chest with a shotgun, and Callie died from her injuries.

¶3. Birge was indicted on the charge of first-degree murder. At trial, Birge testified in his own defense. Birge testified that when he learned of the fight, he went to Callie's residence to check on his daughter. When Birge arrived at Callie's residence, a girl came out with a gun.[1] As a result, Birge left and went to his house to get a gun.

¶4. When Birge returned to Callie's residence, he was unable to find anyone in or near the residence. He went around to the back of the residence and noticed that the fight between Callie and Rose had moved to the street. Birge stated he saw Callie pulling his daughter's hair and yelled for them to stop. Birge further stated he heard someone say, "She gonna beat her . . . . Nobody going to stop it." Birge then testified as follows:

> And I got my gun, I went on out in the street. I struck [Callie], trying to break up the fight. I struck [Callie] across the back with the gun, tried to break up the fight. [Callie's mother, Santonia,] ran up behind me and caught me and we started tussling because she seen I had hit her daughter with the gun. She tried

---

[1] Testimony from other witnesses established that the girl was Tikea.

2

to take it from me. She tried to take it. We started tussling with the gun and the gunshot.

¶5. Santonia testified that she and her husband, Oliver, went to Callie's residence when they learned of the fight. When they arrived, Santonia got out of the car and saw a fight in the street. Santonia stated that although there were quite a few people around, the fight was between Callie and Rose only. Santonia described the fight as a fistfight.

¶6. Santonia further testified that as she was walking toward the fight, she heard a gunshot. She then saw her daughter fall. At that point, Santonia turned around and saw Birge with a gun. As a result, Santonia "went to wrestling with him." Santonia testified that she was certain she did not begin "tussling" with Birge until after Callie had been shot. Santonia also testified that Birge was the only person with a gun.

¶7. Tikea testified that the fight originated inside Callie's residence, but eventually moved to the street. Tikea acknowledged that while inside Callie's residence, during the initial fight between Callie and Rose, she got her sister's gun, which was on top of the refrigerator. Tikea claimed she never left Callie's residence with the gun. However, Shequita Dostry, Callie's neighbor, testified that when Callie and Rose came out of Callie's residence, Tikea came down the stairs, and was standing at the bottom of the steps, with a gun in her hand. Dostry stated that she took the gun away from Tikea and put it back inside Callie's residence.

¶8. Tikea testified that she saw Birge walk from behind Callie's residence with what appeared to be a big stick. Tikea saw Birge lift up the gun and then heard a gunshot. Tikea subsequently saw Callie fall. After Callie fell, Tikea saw Santonia approach Birge and "tussle with him with the gun."

3

¶9. Tikea stated Birge was alone just prior to the shooting. She described Birge as follows:

> Like he just, like I said, he just walked up like a regular person, like, you know, like I said, I thought he had a stick in his hand. He walked up from the grass, walked in the street. I mean it was like he didn't even [try] to figure out what was going on. It was just like he, he was just ready to shoot.

¶10. Birge was convicted of manslaughter and sentenced to fifteen years, with five years suspended, leaving ten years to serve in the custody of the Mississippi Department of Corrections. Birge filed a motion for a judgment of acquittal notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied. Birge now appeals and argues: (1) there is insufficient evidence to support the verdict, since the State failed to prove that he did not act in necessary self-defense, and (2) the verdict is against the overwhelming weight of the evidence, which established that Birge acted in necessary self-defense.

ANALYSIS

*I.    Sufficiency of the Evidence*

¶11. In considering whether the evidence is sufficient to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different

4

conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id*.

¶12. The elements of manslaughter include "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Miss. Code Ann. § 97-3-35 (Rev. 2006). Mississippi Code Annotated section 97-3-15(1)(f) (Rev. 2006) provides:

> The killing of a human being . . . shall be justifiable . . . [w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished[.]

"When self-defense is raised, the State bears the burden of proving beyond a reasonable doubt that the defendant was not acting in necessary self-defense." *Harris v. State*, 937 So. 2d 474, 481 (¶23) (Miss. Ct. App. 2006).

¶13. Birge argues the evidence was insufficient to support the verdict of manslaughter since the State failed to prove beyond a reasonable doubt that he did not act in necessary self-defense. Birge asserts "the evidence was such that no reasonable juror could find beyond a reasonable doubt that [he] did not have a reasonable apprehension of an imminent threat of great personal injury to his daughter." We disagree.

¶14. Just before Callie's death, Callie and Rose were engaged in a fistfight in the street. Neither Callie nor Rose had a weapon. Although Birge may have initially seen Tikea with a gun outside of Callie's residence, Birge admitted on cross-examination that when he returned, he did not see Tikea. Moreover, Birge admitted that when he returned, he did not

5

see anyone on the street with a gun. In fact, the testimony shows the only person with a gun at the scene was Birge. Thus, the record indicates that Birge's subjective fear of imminent danger and his subsequent use of deadly force were unreasonable and unnecessary under the circumstances.

¶15. Additionally, as section 97-3-15(1)(f) implies, a self-defense claim involves the intentional killing of a human being. Here, according to Birge, he did not intentionally kill Callie. Instead, Birge claims the gun went off by accident while he and Santonia were tussling. Thus, the record, including Birge's own testimony, negates Birge's claim of self-defense or defense of others.

¶16. Viewing the evidence in the light most favorable to the State, we find sufficient evidence was presented to support the verdict of manslaughter. As a result, the circuit court's denial of Birge's motion for a judgment notwithstanding the verdict was proper.

  II.    *Weight of the Evidence*

¶17. "When reviewing a denial of a motion for [a] new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). The evidence is weighed in the light most favorable to the verdict. *Id*. Birge argues the overwhelming weight of the evidence shows that he acted in self-defense or defense of others. We disagree.

¶18. The record shows conflicting testimony was presented regarding Callie's death. "Where the verdict turns on the credibility of conflicting testimony and the credibility of the

6

witnesses, it is the jury's duty to resolve the conflict." *Nicholson v. State* 523 So. 2d 68, 71 (Miss. 1988). Here, the jury was instructed on self-defense, defense of others, and accident and misfortune. The jury considered the evidence and Birge's theory of the case. The jury had the authority to assess the credibility of the witnesses and to give weight to the testimony of the witnesses.

¶19. We do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. Thus, we find the circuit court's denial of Birge's motion for a new trial was proper.

¶20. **THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT, OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF FIFTEEN YEARS, WITH TEN YEARS TO SERVE AND FIVE YEARS SUSPENDED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.**

**LEE, C.J, IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**